IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-924

Filed 21 May 2025

Stanly County, No. 23CVS000493-830

ADAMS HOMES AEC, LLC, Plaintiff,

v.

STANLY COUNTY, NORTH CAROLINA, Defendant.

Appeal by Plaintiff from an order entered 18 July 2024 by Judge Claire V. Hill in Stanly County Superior Court. Heard in the Court of Appeals 9 April 2025.

*Shumaker, Loop & Kendrick, LLP by Frederick M. Thurman, Jr., for Plaintiff-Appellant.*

*Womble, Bond, Dickenson (US) LLP, by Alexander J. Buckley, for Defendant-Appellee.*

WOOD, Judge.

Adams Homes AEC, LLC ("Plaintiff") appeals from an order denying Plaintiff's Motion for Summary Judgment and granting the cross Motion for Summary Judgment for Stanly County ("Defendant").

## I.    Factual and Procedural Background

In September 2007, a developer recorded a map for a new development in the City of Locust, North Carolina, named Glenwood at the Village of Redbridge (the "Development"). In May 2018, Plaintiff began acquiring multiple parcels within the existing development. In November 2018, Defendant entered an Interlocal

Agreement with the City of Locust. The City of Locust is primarily located in Stanly County, however certain portions of the city limits, including the Development, are in Cabarrus County. Cabarrus County did not have the infrastructure necessary to provide water and sewer services to those neighborhoods therefore, the interlocal agreement was created in which Defendant agreed to provide water service to all the developments within the City of Locust including those in Cabarrus County.

Plaintiff began building homes on their parcels within the Development sometime after the Interlocal Agreement was signed and upon completion of the homes would arrange with Defendant for the installation of water meters and the commencement of water services.

In September 2022, Defendant enacted Ordinance SCU No. 2022-02, "An Ordinance to Adopt System Development Fees for the Water and Sewer System as Authorized by Article 8 of Chapter 162A of the North Carolina General Statutes" (the "Ordinance"). The Ordinance is a land use plan which allows Defendant to collect System Development Fees, a charge or assessment for service imposed for new developments, to fund the costs of capital improvements attributable to expanding capacity to service new developments.

In May 2023, Defendant began charging Plaintiff a system development fee ("SDF") under the Ordinance for each parcel in the Development when it was connected to water services. Plaintiff paid the fees under protest. On 13 June 2023,

Plaintiff filed a Complaint for Declaratory Judgment against Defendant. Defendant filed their answer to Plaintiff's complaint on 16 August 2023.

On 29 May 2024, Plaintiff filed a Motion for Summary Judgment, and on 31 May 2024, Defendant filed a cross Motion for Summary Judgment. Both motions for summary judgment were heard in Stanly County Superior Court on 10 June 2024. On 18 June 2024, the trial court filed an order denying Plaintiff's motion for summary judgment and granting Defendant's motion for the same finding, "Defendant Stanly County has properly interpreted Ordinance No. 2022-02" and the "System Development Fees assessed by Stanly County . . . were validly assessed and done so in a manner consistent with the Ordinance."

Plaintiff filed written notice of appeal on 18 July 2024.

## II. Analysis

On appeal, Plaintiff contends the trial court erred as a matter of law in interpreting Ordinance SCU No. 2022-02 and granting summary judgment to the Defendant. Specifically, Plaintiff contends their parcels do not meet the definition of "new development" as outlined in the Ordinance. We disagree.

### A. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Galloway as Trustee of Melissa Galloway Snell Living Trust Dated May 1, 2018*

*v. Snell*, 384 N.C. 285, 287, 885 S.E.2d 834, 836 (2023).

**B. Interpretation of Ordinance SCU no. 2022-2**

In 2017, the North Carolina General Assembly enacted session law 2017-138 (HB 436) known as the "Public Water and Sewer System Development Fee Act" ("the Act") amending Chapter 162A of the General Statutes. 2017 N.C. Sess. Laws 138; N.C. Gen. Stat. §§ 162A-200-215 (2024). This amendment authorized procedures and methods for the calculation and authorization of system development fees to be charged by local governments. A system development fee ("SDF") is defined by statute as, "[a] charge or assessment for service . . . imposed with respect to new development to fund costs of capital improvements necessitated by and attributable to such new development, to recoup costs of existing facilities which serve such new development, or a combination of those costs. . . ." N.C. Gen. Stat. § 162A-201(9) (2024).

In September 2022, Defendant enacted Ordinance SCU No. 2022-02, "An Ordinance to Adopt System Development Fees for the Water and Sewer System as Authorized by Article 8 of Chapter 162A of the North Carolina General Statutes" ("the Ordinance") in compliance with the Act passed by the General Assembly. The Ordinance specifically states, "[s]ystem development fees shall be charged consistent with the requirements of [N.C. Gen. Stat.] Chapter 162A, Article 8 as such may be amended from time to time. Terms used in this section shall have the same meanings as set forth in [N.C. Gen. Stat.] Chapter 162A, Article 8." Ordinance SCU No. 2022-

02.

Under the Ordinance, "new development" is defined in pertinent part as,

> . . . any of the following occurring after the September 6, 2021 (the one year look back period for platted subdivisions required by [N.C. Gen. Stat.] § 162A-201) *that increases the water and/or sewer capacity necessary to serve that development*:
>
> a. The subdivision of land;
> b. The construction, reconstruction, redevelopment, conversion, structural alteration, relocation, or enlargement of any structure *which increases the number of service units*; or
> c. Any use or extension of the use of land *which increases the number of service units*.

Ordinance SCU No. 2022-02 (emphasis added). This definition is consistent with the definition of "new development" in N.C. Gen. Stat. § 162A-201(6).

Plaintiff's argument hinges on the definition of "service units." Plaintiff argues that service units should mean the capacity necessary to serve the development as determined when the original map was approved and recorded in Cabarrus County, in which case there was no "increase in service units" based on Plaintiff's home building activity that would qualifying as "new development." We disagree.

We review issues of statutory construction *de novo. In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *JVC Enters., LLC v. City of Concord*, 376 N.C.

782, 785, 855 S.E.2d 158, 161 (2021). However, if the statutory language is ambiguous, "[i]t is well settled that . . . the court should defer to the agency's interpretation of the statute as long as the agency's interpretation is reasonable and based on a permissible construction of the statute." *State ex rel. Utils. Comm'n v. Env't Working Grp.*, 295 N.C. App. 650, 662, 907 S.E.2d 409, 417 (2024).

The term "service unit" is not defined within the Ordinance. However, it is defined within N.C. Gen. Stat. § 162A-201(8), and the Ordinance explicitly included the terms of the Act. Under the Act service unit is defined as "[a] unit of measure, typically an equivalent residential unit, calculated in accordance with generally accepted engineering or planning standards." N.C. Gen. Stat. § 162A-201(8) (2024). An equivalent residential unit ("ERU") is not defined within Article 8 of N.C. Gen. Stat. § 162A-201 and a thorough review of the General Statutes and Administrative Code reveal no use of the term. Additionally, there is a dearth of case law defining an ERU. In *Smith Chapel Baptist Church v. City of Durham,* our Supreme Court heard a case involving a City of Durham code in which Durham defined an ERU as "2,400 square feet of impervious surface, which is the average amount of impervious surface on a single family property in the city." *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 817, 517 S.E.2d 874, 882 (1999) ( citing Durham, N.C., Code ch. 23, art. VIII, § 23–201). Notably, in *Smith Chapel Baptist Church* our Supreme Court did not define what an ERU is. Other cities and towns within North Carolina utilize similar definitions of ERU in their codes as Durham does, typically when

referencing storm water management. In Kinston an ERU is defined as "the total impervious area of a typical single-family residential property, and is determined as the median impervious area of a representative sample, as determined by the city, of all developed residential properties in the single-family residential category." Kinston, N.C., Code part II, ch. 19, art. IV, § 19-182. In Kings Mountain the code reads "such charges shall be based on the amount of impervious surface on each parcel as determined by the equivalent residential unit standard. For purposes of this chapter, an equivalent residential unit (ERU) is 2000 square feet of impervious surface." Kings Mountain, N.C., Code title V, ch. 54, § 54.006. In Apex an ERU is defined as 2,700 square feet of impervious surface, which is the average amount of impervious surface on a single-family detached property in the town (based on GIS analysis). Apex, N.C., Code ch. 12, art. III, div. VII, §12-111.

According to definitions currently in use within the state of North Carolina, an ERU is a measurement equal to the average area of impervious surface on a parcel of land for a single-family residential property in the applicable regulated area. We apply this definition to the context of the statute as "[w]e first look at the statute as a 'composite whole' to avoid construing any of its words or phrases out of context." *In re Expungement for Spencer*, 140 N.C. App. 776, 779, 538 S.E.2d 236, 238 (2000) (cleaned up). In applying this definition of ERU to section (A)(2)(b) of Ordinance SCU No. 2022-02, new development occurs when "construction, reconstruction, redevelopment, conversion, structural alteration, relocation or enlargement of any

structure increases the number of [measurements equal to the average area of impervious surface on a parcel of land for a single-family residential property in Stanly County]." This definition lacks precision and is ambiguous. One could perceive "the measurements equal to the average area" as a calculation of estimated possible capacity needed in the future based on the recorded maps as posited by the Plaintiff or alternatively it could be the number of actual impervious surfaces of "average area" in existence for which water capacity is imminently necessary as argued by Defendant.

Since the Ordinance and the Act are ambiguous in regard to the definition of service units or equivalent residential units and, therefore, what qualifies as new development, precedent dictates that we "should defer to the agency's interpretation of the statute as long as the agency's interpretation is reasonable and based on a permissible construction of the statute." *State ex rel. Utils. Comm'n v. Env't Working Grp.*, 295 N.C. App. 650, 662, 907 S.E.2d 409, 417 (2024).

In this instance, Defendant contends their Ordinance should be read to include increases in the number of actual ERUs in existence as constituting "new development." We agree. Defendant's reading of ERUs within the definition of "new development" is a reasonable construction of the Ordinance that gives meaning not only to all the words within section (A)(2) of Ordinance SCU No. 2022-02 but is also consistent with other sections within the entirety of Ordinance SCU No. 2022-02 as well as the enabling statute N.C. Gen. Stat. § 162A-201.

Within section (A)(2) of the Ordinance, reading ERUs to refer to actual impervious surface gives meaning to each of the nouns utilized in subsections b and c. This aligns with the presumption that "when the legislature enacts a statute, it intentionally includes and gives meaning to every word therein." *Happel v. Guilford Cnty. Bd. of Educ.*, __ N.C. __, __, 913 S.E.2d 174, 192 (2025). If the actual existence or creation (new construction) of an impervious surface is read into the definition, then "construction, reconstruction, redevelopment, conversion, structural alteration, relocation, or enlargement of any structure" potentially increases the number of service units. In contrast, if ERUs refer to impervious surfaces that potentially could exist, and the corresponding capacities determined upon the original plot map of a development, then irrespective of any future building or land uses the number of service units as determined at the time the map was filed would not increase.

Within the broader reading of the Ordinance, section E subsections 2 and 3 both support Defendant's interpretation. Subsection 2 states,

> For all [non-subdivision] new development, the County shall collect the system development fee at the earlier of either of the following:
> (a) The time of application for connection of the individual unit of development to the service or facilities.
> (b) When water or sewer service is committed by the county.

Ordinance SCU No. 2022-02(E)(2). The Ordinance authorizes a fee collection once an actual structure is prepared to receive water services not when a proposed

subdivision map is recorded and possible water capacity could be calculated. If the later reading of the Ordinance were adopted then Defendant would collect fees based on the capacity suggested when the map is filed, a proposal that could negatively impact developers who may or may not be able to complete the proposed development as drawn and may not have the funds to pay all water fees long before any houses are ready for sale. Such a payment schedule was explicitly prohibited by the legislature in N.C. Gen. Stat. § 162A-213, which creates a specific timeline for the collection of system development fees anchored on either the building of a structure or the connection of a structure to the service. N.C. Gen. Stat. § 162A-213 (2024). Additionally, subsection 3 states,

> For ongoing subdivisions currently under construction, the system development fees shall be due at the time of application for water and/or sewer service. All subdivided lots that have completed dwellings and the owner or developer has made application and paid for water and/or sewer connection shall not pay system development fees for those lots.

Ordinance SCU No. 2022-02(E)(3). Again, this subsection of the Ordinance is consistent with the notion that the completion of construction effectively increases the number of service units thereby triggering the system development fees.

Finally, N.C. Gen. Stat. § 162A-201 defines "existing development" as "[l]and subdivisions, structures, and land uses in existence at the start of the written analysis process required by [N.C. Gen. Stat. §] 162A-205, no more than one year

prior to the adoption of a system development fee." N.C. Gen. Stat. § 162A-201(3) (2024). Based on this clear and unambiguous definition, the parcels at issue in the case *sub judice* do not qualify as existing development because the structures and land uses in contest were not in existence one year prior to the 6 September 2022 adoption of system development fees. If Plaintiff's proposed definition of ERU were incorporated in the Ordinance defining new development, then any parcels that were mapped prior to 6 September 2021 but have not completed construction or applied for water or sewer services, such as the parcels at issue here, would be neither new development nor existing development. This is an issue the legislature likely would have foreseen and a result they would not have intended to occur. Therefore, we agree with Defendant that a reasonable and permissible construction of the Act and Ordinance would include such parcels by reading the definition of ERUs to refer to actual completed construction of an average impervious surface.

### III.    Conclusion

Section (A)(2)(b) of Ordinance SCU No. 2022-02 based on N.C. Gen. Stat. §162-201(6) and (8) is ambiguous; therefore, statutory interpretation precedence dictates we turn to Defendant Stanly County's interpretation of its own Ordinance. Finding Defendant's interpretation to be both reasonable and based on a permissible construction of the statute, we affirm the trial court's order granting summary judgment for Defendant.

AFFIRMED.

Judge ARROWOOD concurs.

Judge FREEMAN concurs in result only.